# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

───────────────────

**AGILENT TECHNOLOGIES, INC.,**
*Appellant*

**v.**

**WATERS TECHNOLOGIES CORPORATION,**
*Appellee*

───────────────────

2015-1280

───────────────────

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. 95/001,947.

───────────────────

Decided: January 29, 2016

───────────────────

JOHN M. GRIEM, JR., Carter Ledyard & Milburn LLP, New York, NY, argued for appellant.

ERIK PAUL BELT, McCarter & English, LLP, Boston, MA, argued for appellee. Also represented by KIA LYNN FREEMAN, DEBORAH M. VERNON.

───────────────────

Before MOORE, O'MALLEY, and TARANTO, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Agilent Technologies, Inc. ("Agilent") seeks review of a final decision of the United States Patent and Trademark

Office Patent Trial and Appeal Board ("the Board") in an inter partes reexamination of U.S. Patent No. 6,648,609 to Terry A. Berger et al. ("the '609 patent"). The threshold question is whether Agilent is the right party to appeal the reexamination decision. Because Aurora SFC Systems, Inc. ("Aurora"), not Agilent, is the third-party requester, Agilent lacks a cause of action to bring this appeal. We, therefore, dismiss Agilent's appeal.

I. BACKGROUND

A. The '609 patent

We include some background information about the claimed invention to provide context. The '609 patent relates to chromatography systems that use highly compressed gas, compressible liquid, or supercritical fluid. In liquid chromatography, a sample is first mixed with a liquid and this mixture then flows through a chromatography column that is typically packed with absorbent particles or gel. The '609 patent is directed to using a pump as a pressure source for supercritical fluid chromatography ("SFC"), a more efficient and advanced form of chromatography. SFC uses pumps to regulate the flow of compressible fluids, such as supercritical carbon dioxide, through the column. Accurately controlling the flow in this system is difficult and typically requires an expensive pump.

The '609 patent provides an alternative system for SFC that allows for the effective use of a less expensive and less precise pump than was required by the prior art. The system regulates the flow of the compressible fluid using pressure regulators and a restriction in the flow stream. A forward-pressure regulator ("FPR") is installed directly downstream of the pump. Downstream of the FPR, the flow is restricted with a precision restrictor, which is also called an orifice. Downstream of the orifice is a back-pressure regulator ("BPR"). "The series of an FPR-orifice-BPR is designed to control the pressure drop

across the orifice, which dampens out oscillation from noisy pressure signals caused by large ripples in the flow leaving the pump." '609 patent col. 4 ll. 32-36. A differential pressure transducer can also be installed on the flow lines around the restrictive orifice to "control" the pressure drop across the orifice. As originally issued on November 18, 2003, the '609 patent had 11 claims, with two independent claims, 1 and 9, directed to a system. Claims 1 and 9 differed in their use of the word "restrictor" or "orifice," this difference being immaterial for the appeal. Dependent claim 4 added a differential pressure transducer to control pressure drops across the restrictor.

## B. Procedural History

In 2011, Appellee Waters Technologies Corporation ("Waters") brought suit against Aurora for, *inter alia*, infringement of the '609 patent in the United States District Court for the District of Delaware in *Waters Technologies Corp v. Aurora SFC Systems, Inc.*, No. 1:11-cv-00708-JEI-KW.

On March 27, 2012, Aurora filed a request for inter partes reexamination of all claims of the '609 patent. The Request cited new prior art, including U.S. Patent No. 4,799,511 to Azimov ("Azimov") and U.S. Patent No. 5,952,556 to Shoji ("Shoji"). On July 9, 2012, in response to an initial Office Action rejecting all the claims of the '609 patent, Waters amended independent claims 1 and 9 to incorporate claim 4 and added dependent claims 12 and 13, which recite the system of claims 1 and 9 respectively, with the additional limitation: "wherein the flow stream comprises $CO_2$."

According to Agilent, on or about August 2012, it acquired substantially all of Aurora's assets. Appellant Br. 8-9. As part of that acquisition, Agilent says it agreed to be bound by the outcome of the two reexamination proceedings, including the '609 reexamination and the pending patent infringement litigation. *Id.* At that point in

time, nothing was filed identifying Agilent in the reexamination. In fact, after the examiner issued its Action Closing Prosecution ("ACP") on September 24, 2012 and Waters filed its response, Aurora, not Agilent, submitted third-party comments.

The examiner then issued a Right of Appeal Notice ("RAN"), rejecting all remaining claims of the '609 patent on various grounds. The examiner found that amended independent claims 1 and 9 were anticipated by Azimov and that new dependent claims 12 and 13 were obvious in view of Azimov and the Admitted Prior Art of the '609 patent. The examiner also noted that the specification itself showed that pumping carbon dioxide through a pressure regulator and restrictors was well-known.

Waters filed a notice of appeal to the Board, and Aurora cross-appealed on March 8, 2013. The cross-appeal notice took issue with the examiner's failure to adopt the proposed rejection of claims 1, 2, 9-11, 12, and 13 over Azimov in view of Shoji. Aurora filed a request to change the real party in interest from Aurora to Agilent on April 26, 2013. Agilent's counsel began participating in the proceedings along with counsel for Aurora.

The Board reversed all of the examiner's rejections. *Aurora SFC Sys., Inc. v. Waters Techs. Corp.*, No. 2014-003320, 2014 WL 4923558, at *17 (P.T.A.B. Sept. 29, 2014). According to the Board, Azimov did not anticipate the independent claims because it does not disclose a "differential pressure transducer." The Board's disagreement with the examiner stemmed from the Board's construction of the word "control" to mean "to adjust to a requirement" or to "regulate." *Id.* at *6. This construction excludes shutting off a pressure drop across the orifice, which is all the Azimov reference's flow switch is capable of doing. *Id.* at *10. The Board adopted the new ground of rejection proposed in the cross-appeal as to claims 1, 2, and 9-11, however, because Shoji teaches a

differential pressure transducer capable of controlling the pressure drop across the orifice. The Board declined to enter a new ground of rejection for claims 12 and 13 because the cross-appellant did "not explain how either Azimov or Shoji, or a combination of the two, teaches or suggests" the limitation of the flow stream comprising $CO_2$. *Id.* at *17. The Board's decision listed Aurora as the third-party requester and Aurora's counsel as counsel for the third-party requester.

Agilent appealed to this court. Waters moved to dismiss the appeal for lack of standing. A motions panel denied the motion, directing the parties to address the issue in their briefs instead.

## II. DISCUSSION

The parties dispute our jurisdiction over this appeal. Agilent asserts that we have jurisdiction over this appeal under 35 U.S.C. § 141.[1] Waters disagrees, arguing that, while § 141 is the right statute, Agilent is the wrong party to bring this appeal because Aurora—not Agilent—is the third-party requester of the inter partes reexamination.

Although the parties frame this dispute as one relating to jurisdiction, it is properly framed as one relating to whether Agilent has a cause of action. Jurisdiction and standing are concepts distinct from each other, though they are related for Article III purposes, and distinct from having the right to maintain a cause of action.[2] These are

---

[1]    Agilent correctly notes that, because the inter partes reexamination was filed before the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), discontinued such proceedings, the pre-AIA versions of the relevant provisions apply.

[2]    *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("Thus it may be said that *jurisdiction* is a question of whether a federal court has the power, under the Consti-

not interchangeable terms and should be used with care. "[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

The question the parties raise, in fact, is whether Agilent is a member of a class of litigants that may enforce a legislatively created right or obligation created under 35 U.S.C. § 141. "If a litigant is an appropriate party to invoke the power of the courts, it is said that he has a 'cause of action' under the statute, and that this cause of action is a necessary element of his 'claim.'" *Davis*, 442 U.S. at 239; s*ee also Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015) ("We have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits"). "Whether petitioner has asserted a cause of action, . . . depends not on the quality or extent of her injury, but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue." *Davis*, 442 U.S. at 239 n.18. We turn to that properly identified question.

The parties agree that Agilent's right to appeal, if any, comes from 35 U.S.C. § 141. We, therefore, turn to

---

tution or laws of the United States, to hear a case; *standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction; *cause of action* is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court; and *relief* is a question of the various remedies a federal court may make available." (internal citations omitted)).

the language of the statute.  After all, statutory interpretation focuses on the language of the statute itself, and a statute's unambiguous language is ordinarily regarded as conclusive.  *See Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed. Cir. 2010).

> A patent owner, or a third-party requester in an inter partes reexamination proceeding, who is in any reexamination proceeding dissatisfied with the final decision in an appeal to the Board of Patent Appeals and Interferences under section 134 may appeal the decision only to the United States Court of Appeals for the Federal Circuit.

35 U.S.C. § 141.  35 U.S.C. § 315(b) further provides that:

> A third-party requester [ ] may appeal under the provisions of section 134, and may appeal under the provisions of sections 141 through 144, with respect to any final decision favorable to the patentability of any original or proposed amended or new claim of the patent . . . .

These two statutory provisions thus appear, on their face, to confer the right to appeal an adverse reexamination decision only on patent owners and third-party requesters.

In its opening brief, Agilent alternately calls itself the "successor-in-interest" and "privy" of Aurora, and argues that it, therefore, "enjoys the protection extended by the statutes."  Appellant Br. 22.  Waters responds that Agilent is, at best, merely Aurora's privy, that mere privies do not enjoy the right to appeal under the statutes, and that Agilent does not become the third-party requester by being Aurora's privy.  In reply, Agilent abandoned its original statement that it is Aurora's privy and argues that it is, in fact, Aurora's factual and legal successor-in-interest and, therefore, that it is the true third-party requester.  After explaining why Agilent was correct to

abandon its "privy" argument, we evaluate Agilent's claim that the asset purchase on which it relies confers on it the status of a third-party requester for purposes of pursuing this appeal.

As Waters points out, while § 141 does not reference privies of third-party requesters when defining the categories of litigants who may appeal from reexamination decisions, other statutory provisions governing inter partes reexaminations specifically mention privies. Provisions governing estoppel for inter partes reexaminations state:

> (a) . . . [O]nce an order for inter partes reexamination of a patent has been issued . . . neither the third-party requester *nor its privies* may file a subsequent request for inter partes reexamination of the patent until an inter partes reexamination certificate is issued . . .

> (b) . . . if a final decision in an inter partes reexamination proceeding instituted by a third-party requester is favorable to the patentability of any original or proposed amended or new claim of the patent, then neither that party *nor its privies* may thereafter request an inter partes reexamination of any such patent claim on the basis of issues which that party *or its privies* raised or could have raised in such civil action or inter partes reexamination proceeding . . . .

35 U.S.C. § 317 (emphases added). Thus, Congress explicitly estops privies from requesting or maintaining certain inter partes reexaminations against the same patent. The fact that Congress references privies here, but not in § 141, indicates that Congress recognized the difference between the third-party requester and its privies. *Res-Care, Inc. v. United States*, 735 F.3d 1384, 1389 (Fed. Cir. 2013) ("A cardinal doctrine of statutory interpretation is the presumption that Congress's 'use of different terms

within related statutes generally implies that different meanings were intended.'" (quoting 2A Norman Singer, Statutes and Statutory Construction § 46.06 (7th ed. 2007))). Because Congress explicitly provided for appeals of reexaminations by third-party requesters but not privies, we conclude that, based on the unambiguous language of the statutes, mere privies lack a cause of action to appeal. "[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1358 (Fed. Cir. 2012) (citation omitted).

But Agilent does not stop there; it also calls itself Aurora's successor-in-interest, and, by its reply brief, contends that "Agilent is far more than a 'mere privy'—it is the legal and factual successor in interest to Aurora." Appellant Reply Br. 12. Agilent maintains that it is the latter because it bought substantially all of Aurora's assets before the reexamination concluded, including rights relating to the underlying reexaminations. Agilent contends that this fact alone is sufficient to allow it to substitute itself for Aurora as the third-party requester, both for purposes of participation in the reexamination and for purposes of § 141.

35 U.S.C. § 100(e) defines the term "third-party requester" in Title 35 to mean "a person requesting ex parte reexamination under section 302 or inter partes reexamination under section 311 who is not the patent owner." Agilent asks us to assign significance to the tense of the verb "request" in § 100(e)—specifically, the fact that the "third-party requester" is the person "*requesting*" reexamination as of any given point in time and not the person "who *requested*" reexamination upon initiation. While the language of the statute does not explicitly forbid a change in the identity of the third-party requester over the course of the proceeding or on appeal, however, it similarly does

not appear to address whether and under what circum-
stances a change in the identity of the third-party re-
quester can occur.  *See Vaillancourt v. Becton Dickinson &
Co.*, 749 F.3d 1368, 1370 (Fed. Cir. 2014) (rejecting former
patent owner's argument that § 141 "does not explicitly
bar" delegation of appeal rights and holding that "[t]his
court sees no reason . . . to extend that procedural right
beyond what is clearly set forth in § 141").  At best, it does
not inform us either way about how to resolve the parties'
debate.[3]

Waters argues that one could just as easily read 35
U.S.C. § 311, which governs a "Request for inter partes
reexamination," to suggest that a third-party requester
cannot change over the course of a proceeding.  Section
311 states that "[a]ny third-party requester at any time
may file a request for inter partes reexamination by the
Office of a patent," and the request shall "be in writing,
include the identity of the real party in interest, and be
accompanied by payment of an inter partes reexamination
fee."  It is undisputed that Agilent did not perform any of
these actions.

We decline to decide whether a successor-in-interest
becomes the third party requester for purposes of either

---

[3]    *Vaillancourt*, 749 F.3d at 1368-69, does little to
advance Agilent's claim.  That case is largely inapposite,
as it does not address § 141 as it applies to third-party
requesters.  Rather, it holds that the identity of the *patent
owner* can change for purposes of § 141 with the complete
transfer of a patent's ownership after the reexamination
proceeding but before an appeal to this court.  *Id.*  Where-
as ownership of a patent is the *sine qua non* of a patent
owner, a party's status as a third-party requester does not
derive, at least in the first instance, from the ownership of
a set of particular assets.

§ 100(e) or § 141 because Agilent has not established that it is, in fact, Aurora's successor-in-interest.

According to Agilent, it "acquired substantially all the assets of Aurora (including all rights relating to the reexaminations)" in August 2012, five months after the filing of the reexamination request. Appellant Br. 8-9. We do not know precisely what was transferred, but "substantially all" does not mean "all." After the transaction, Aurora remained a distinct, ongoing entity. And after the examiner issued an ACP in September 2012, Waters filed a response, and in November, it was Aurora—not Agilent—who submitted third-party comments. That November 2012 submission—which significantly post-dates the asset purchase agreement—belies Agilent's claim that it effectively stepped into Aurora's shoes as the third-party requester upon taking over Aurora's assets. Agilent never addresses this point, except to state at oral argument that, "I believe that that was simply so that legal knowledge and strategies could be transitioned among counsel." Oral Argument at 2:45-3:02, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 15-1280.mp3.

It was not until April 26, 2013—approximately eight months after the asset transfer and one month after the cross-appeal to the Board was noticed—that Aurora filed a request to change the "real party in interest" from Aurora to Agilent. Neither Aurora nor Agilent requested that Agilent be substituted as the "third-party requester," however. At the hearing before the Board on April 23, 2014, Aurora's counsel appeared on behalf of Aurora as the respondent. She never withdrew as counsel from the reexamination proceeding. Aurora was subsequently listed in the caption of the Board's decision as the third-party requester.

In addition, Aurora remains a party to the underlying district court litigation. Agilent makes much of the fact

that, "[a]s part of th[e] acquisition, Agilent also agreed to be bound by the outcome of the two reexamination proceedings, and the patent infringement litigation." Appellant Br. 9. But in doing so, it ignores the fact that Aurora would also be bound by the outcome of the patent litigation, and, therefore, retains an apparent stake in the outcome of the case. Indeed, in November 2012, Waters moved for leave to amend its complaint and add Agilent as a defendant in the district court litigation. *See* Motion for Leave to Add Agilent and File Amended and Supplemental Complaint, Dkt. 110, *Waters*, No. 1:11-cv-00708-JEI-KW. Aurora filed an answering brief *opposing* the motion, arguing, *inter alia*, that "Waters fails to explain why the transfer of Aurora's assets changes the underlying infringement analysis." *See* Answering Brief in Opposition re Motion for Leave to Add Agilent, Dkt. 122 at 16, *Waters*, No. 1:11-cv-00708-JEI-KW. On January 25, 2013, the district court issued an order granting leave to amend. Order Granting Motion for Leave to Add Agilent, Dkt. 149, *Waters*, No. 1:11-cv-00708-JEI-KW. Because Aurora is still a party to and will be bound by the judgment in the underlying infringement litigation, we do not find that Agilent has established that it is Aurora's successor-in-interest or has otherwise "stepped into the shoes of Aurora" for all intents and purposes. *See* Appellant Br. 17.

Finally, though not dispositive, we note that Agilent has not furnished this court with a copy of the asset transfer agreement, while simultaneously relying on a portion of its contents as the basis for its right to appeal. Agilent provided only the four-page Declaration of Michael Tang, Agilent's Assistant General Counsel, to establish that Agilent has "succeeded to all of Aurora's legal claims and liabilities relating to the purchased Business." Appellant Reply Br. 3. Although we do not doubt the veracity of the statements made in the declaration, it is an incomplete account of the agreement and does not allow us to verify all of Agilent's claims and

develop our own understandings. For example, the declaration refers several times to the Seller's "Business," "the terms and conditions set forth in this Agreement," and "the Excluded Assets," yet fails to provide definitions for any of these terms. *See* Tang. Decl. ¶¶ 2, 5.

The burden of demonstrating a cause of action rests on Agilent, the party seeking relief. *See Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) ("The initial burden is upon the complainant to establish its cause of action"). Agilent has had ample opportunity to establish itself as Aurora's successor-in-interest, but has failed to do so. Therefore, we need not reach whether a successor-in-interest would qualify as a third-party requester. For the foregoing reasons, we hold that Agilent lacks a statutory cause of action to appeal the reexamination decision to this court. Accordingly, we dismiss.

**DISMISSED**